Carroll Thomas ALLMON,
Appellee,

v.

HALE INSURANCE AGENCY,
INC., Appellant,
and
Dakota Fire Insurance Company,
Appellee.

No. 84–1256.

Supreme Court of Iowa.

July 23, 1986.

Rehearing Denied Aug. 18, 1986.

Richard J. Gilloon, of Sodoro, Daly & Sodoro, Omaha, Nebraska, and Richard D. Crotty, Council Bluffs, for appellant.

Lyle A. Rodenburg, Council Bluffs, for appellee Allmon.

Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee Dakota Fire Ins. Co.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and WOLLE, JJ.

HARRIS, Justice.

In this suit to recover for a fire loss under an insurance policy the matter was submitted to a jury by special verdicts. The jury fixed the loss and our task on appeal is to interpret the jury's finding. The trial court believed the jury fixed only that part of the loss which was in excess of an amount previously paid by a different company under a different policy. We think the jury was asked to, and did, fix the total amount of plaintiff's loss. Our holding is at variance with that of the trial court and the court of appeals and accordingly we vacate and reverse.

It seems somewhat strange there could be such controversy about the amount of loss. The insured property had changed hands twice in recent years and was owned by plaintiff only five weeks before it was destroyed by fire. Plaintiff's vendors, Richard and Kathie Comley, purchased "The Hub," a restaurant in Hancock, Iowa, in November 1980 for $30,000. (For simplicity we hereafter refer to the Comleys in the singular as Comley.) There is some evidence Comley fixed up the restaurant during the thirteen months he owned it. On December 29, 1981 Comley sold the property to plaintiff Allmon for $80,000. Comley had been asking $150,000 for the property but reduced his selling price. Allmon never opened the business before it was destroyed by fire February 4, 1982.

Under Allmon's purchase contract he agreed to insure Comley's interest and on the following day he purchased an $80,000 fire insurance policy on The Hub from defendant Dakota Fire Insurance Company (Dakota) through defendant Hale Insurance Agency, Inc. The relationship between Dakota and Hale was disputed at trial and was the subject of a separate special verdict. According to the jury's finding Hale was not Dakota's agent, the policy having been placed through a broker. Allmon testified he was insuring Comley's interest when he bought the policy from Hale.

About eight days later, on January 8, 1982, Allmon went to another town and purchased another $80,000 policy on The Hub from United Fire and Casualty (UFC). He said this was to cover his own interest in the property. Other evidence was that Allmon told the UFC agent he had gotten another policy but it was high and he wanted a better price.

After the fire Allmon filed somewhat conflicting claims with UFC. His first proof of loss claimed $80,000, the limit on the policy. Nine days later he filed a new proof of loss with UFC, claiming $96,000 for the building and $67,000 for its contents. On April 21, 1982, UFC paid Allmon its full coverage of $80,000 for the loss.

This suit is over the first policy, the one issued by Dakota. Having been placed through a broker, it was not underwritten until March of 1982. Allmon paid the premium on April 23, 1982, two days after settling with UFC. The policy was backdated by Dakota to January 1, 1982.

Dakota refused to pay on the ground Allmon was fully compensated by UFC.

Allmon then brought this action against both Hale (the agency) and Dakota, neither of whom cross-claimed.

The jury resolved three issues by special verdicts. It found Allmon had notified Hale Insurance Agency of the loss with due diligence and without unreasonable delay. It however found Hale had not notified Dakota of the loss in the same manner. (On the basis of this finding no judgment was entered against Dakota.) Finally, the jury fixed the loss at $75,000, $50,000 for the building and $25,000 for its contents.

I. The special verdict was in response to the following inquiry posed by the court:

[W]hat is the total of the actual cash value of property (building and contents) of the plaintiff directly lost which was caused by the fire on February 4, 1982, without taking into consideration the deductible provisions of the policy or any amounts received from any other insurance company?

Allmon thinks the $75,000 the jury answered in response was in addition to the $80,000 he received from UFC. The trial court and court of appeals agreed.

■ Plainly, if the total loss was $75,000 Allmon is entitled to no recovery under this policy because he already received more than that for the same loss under the other policy.[1] Allmon's recovery is limited to his actual loss. The rule is that an insured who has recovered for a loss from one company cannot recover for the same loss from a second one. And an insured who has recovered for part of a loss from one company can recover from a second company only enough to make up the full amount of the loss. 44 Am.Jur.2d *Insurance* § 1781 (1982); 45 C.J.S. *Insurance* § 922(a) (1946).

II. The controlling question in the appeal has to do with the meaning of special verdict three. The jury fixed the loss at $75,000. Allmon argues, and the trial court agreed, that the $75,000 was in addi-

tion to the $80,000 Allmon had already received from UFC. But there is no way we can understand the trial court's question and the jury's answer to mean this.

The jury was told to reach its determination "without taking into consideration . . . any amounts received from any other insurance company. . . ." We think the jury was told to fix Allmon's loss and to do so as if there were no other insurance. Allmon would have us strike the words "without taking into consideration" and supplant them with the words "in addition to."

The trial court which formulated the words of the special verdict obviously thought otherwise. But the jury was bound to respond to the words' clear meaning, not the judge's subjective understanding of them.

■ We conclude and hold that the jury fixed Allmon's total loss at $75,000. Because this was $5000 less than he had already received, he is entitled to no recovery from either defendant in this suit. It was error for the trial court to conclude otherwise.

This holding makes it unnecessary for us to explore other issues joined at trial and urged on appeal.

■ III. We feel obliged to point out a violation of Iowa rule of appellate procedure 16, which requires that a brief or appendix shall have pages eight and one half by eleven inches. Both the appendix and its separate volume of exhibits contain pages in excess of the length allowed under the rule.

It should be unnecessary for us to justify or defend our rule. It does have a purpose beyond uniformity. Notably, a number of the appendices and briefs in each appeal are bound into books for filing in various law libraries. Overlength pages play obvious havoc with the process.

1. We have no reason to consider what Allmon's rights would have been to sue both companies for their pro rata shares of the loss because he did not do so. We have no reason to consider whether UFC could recover a pro rata contribution from Dakota because that issue was not presented.

Counsel for appellant are directed within fourteen days to resubmit eighteen copies of their appendix and volume of exhibits with all attachments reduced to the allowable size. Such copies are to be furnished at appellant's counsels' own expense and are not to be taxed as additional costs.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.